UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
           :
GATE TECHNOLOGIES, LLC, et al.,      :
                     Plaintiffs,  :
           :      12 Civ. 7075 (JPO)
          -v -      :
           :      OPINION AND ORDER
DELPHIX CAPITAL MARKETS, LLC, et al.,  :
                     Defendants.  :
           :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

    Plaintiffs Gate Technologies, LLC, Joseph K. Lantona, and Vincent R. Molinari bring this diversity action alleging breach of contract and various other claims under New York state law. Defendants have moved to dismiss several of Plaintiffs' claims, as well as all claims against Defendant Larry E. Fondren, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## I.    Background

###     A.    Factual Background[1]

    Plaintiff Vincent Molinari is CEO of Plaintiff Gate Technologies, LLC ("Gate"). Molinari was introduced to Defendants, and the parties discussed the development of a potential business relationship; in September 2010, Gate entered into a mutual nondisclosure agreement with Defendants DelphX Capital Markets, LLC ("DCM"), Entre Global Services, Inc. ("Entre"), and Lawrence Fondren—the CEO and majority shareholder of DCM and Entre (together,

---

[1] The following facts are taken from the Verified Complaint (Dkt. No. 1), and exhibits thereto, and for purposes of this motion to dismiss are presumed true.

"Defendants"). The purpose of the nondisclosure agreement was to protect confidential information among the parties as they engaged in various negotiations.

In March 2011, after months of negotiations, Gate executed a Letter of Intent ("the Letter") with Defendants, which stated Gate's intent to purchase up to 6.25% equity in DCM and/or Entre. By the Letter's terms, the parties agreed that during a 30-day period, commencing on the date of the Letter, Defendants would suspend all negotiations with other potential purchasers of DCM or Entre shares. (Notice of Removal, Dkt. No. 1 ("Compl."), Ex. A., at ¶ 6.) In consideration for this promise, and as provided by the Letter, Gate advanced to Defendants a fully refundable deposit of $50,000.00. [2]

Later, in May, Gate advanced an additional $25,000.00, as a "fully-refundable deposit," to Defendants, and did so again, also in the amount of $25,000.00, in July. The parties, however, never entered into a final agreement by which Gate would acquire an ownership interest in DCM and/or Entre. As a result, at the close of the 90-day period defined in the Letter, Gate made a demand for the return of the $100,000.00 it had deposited with Defendants. To date, Defendants have not returned any of the monies deposited under the terms of the Letter.

---

[2] Paragraph 7 of the Letter provides as follows:
> Deposit.   In return for the good faith commitment of DCM, Entre and [Fondren] to negotiate exclusively with [Gate] during the Negotiation Period, [Gate] will advance to Entre a fully-refundable deposit in the amount of Fifty Thousand Dollars ($50,000.00) (the "Deposit"). Upon execution of the Definitive Agreement the Deposit will be fully applied as a portion of the [Gate] consideration due DX pursuant to the Initial Purchase. In the event the Definitive Agreement is not executed within the Negotiation Period, DX will refund the Deposit to [Gate] within ninety (90) days following the delivery to DX of [Gate's] demand of such refund.

Plaintiffs also allege that throughout the 30-day period, during which all negotiations with other entities were to be suspended, Defendants were actively engaged in negotiations with other business entities, including Sapient Capital Markets ("Sapient") and Meridian Investments ("Meridian"). These negotiations also involved the sale of an equity stake interest in DCM and/or Entre.

### B. Procedural Background

This case was removed from the Supreme Court of Bronx County in September 2012. (Dkt. No. 1.) Defendants filed a motion to dismiss on September 26, 2012. (Dkt. No. 3.) Plaintiffs opposed Defendants' motion in November 2012, and that opposition was later docketed on December 20, 2012. (Dkt. No. 20.) Defendants replied on November 26, 2012. (Dkt. No. 14.)

## II. Discussion

### A. Motion to Dismiss Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is obliged to "accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In so doing, the court must draw "all inferences in the light most favorable to the non-moving party's favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted). In addition to the complaint, courts may also consider, *inter alia*, "any written instrument attached to the complaint . . . ." *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 382 (S.D.N.Y. 2007).

Although Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," the pleadings must nevertheless reflect "the grounds upon which [the] claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (footnote omitted)).  At bottom, the *sine qua non* of an adequate complaint is plausibility.  *See Twombly*, 550 U.S. at 570 ("Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

All claims of fraud must also comply with Rule 9(b)'s heightened pleading standard, which requires that the complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (quotations omitted)).  Rule 9(b) provides, however, that while the circumstances of the fraud must be pleaded with particularity, "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

B.  **Personal Jurisdiction over Larry E. Fondren**

Defendants move to dismiss all claims against Fondren for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(2).[3] In response, Plaintiffs allege that New York's long-arm statute appropriately confers jurisdiction over Fondren.

While it is the plaintiff who "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit," *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted), "[t]o defeat [a Defendant's] motion to dismiss for lack of personal jurisdiction, [a plaintiff] need only make out a prima facie case of personal jurisdiction." *Viacom Int'l Inc. v. Kearney*, No. 98 Civ. 6226 (SAS), 1999 WL 92601, at *3 (S.D.N.Y. Feb. 22, 1999) (citation omitted). "A prima facie case for personal jurisdiction must satisfy three elements: (1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles." *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, No. 12 Civ. 6390 (JPO), 2013 WL 1775440, at *3 (S.D.N.Y. Apr. 25, 2013) (citation omitted). A motion to dismiss on the ground that personal jurisdiction is lacking constitutes "inherently a matter requiring the resolution of factual issues outside of the pleadings"; accordingly, "all pertinent documentation submitted by the parties may be considered in deciding the motion." *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5563 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001) (citation and quotations omitted).

Personal jurisdiction in a diversity action, such as this, is governed by the law of the state in which the court sits. *See Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.

---

[3] Defendants purport to move to dismiss the claims against Fondren as pursuant to Rule 12(b)(6), for failure to state a claim, but the Court construes the motion against Fondren as one under Rule 12(b)(2), as it alleges a lack of personal jurisdiction.

5

1986); *accord Viacom*, 1999 WL 92601, at *3. Accordingly, here, the Court looks to the law of New York. Plaintiffs assert that jurisdiction over Fondren, a resident of Pennsylvania, is proper pursuant to sections 302(a)(1) and (3) of the New York Civil Practice Law and Rules ("C.P.L.R."). Section 302(a)(1) of the C.P.L.R. imparts jurisdiction over non-domiciliary defendants who "transact[] any business" within the state of New York, so long as the action arises out of such business activity. *See* N.Y. C.P.L.R. § 302(a)(1). "A defendant transacts business in New York when it 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Viacom*, 1999 WL 92601, at *3 (quoting *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382 (1967)). "No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." *Cutco*, 806 F.2d at 365. Thus, in determining whether a defendant has "purposefully availed" himself of the forum state, the Second Circuit has delineated the following, relevant factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted).

"In analyzing the relevant factors, it is well settled that negotiation and execution of a contract in New York by a defendant is sufficient to support long-arm jurisdiction under

C.P.L.R. § 302(a)(1)." *Viacom*, 1999 WL 92601, at *3 (citation omitted); *accord NW Direct Design & Mfg., Inc. v. Global Brand Mktg., Inc.*, No. 98 Civ. 4756 (LAP), 1999 WL 493348, at *3 (S.D.N.Y. July 12, 1999) ("Courts have consistently held that contract negotiations occurring in New York are sufficient to support jurisdiction when they either 'substantially advanced' or were 'essential' to the formation of a contract or if they resulted in a more solid business relationship between the parties." (citations omitted)).

Here, in his affidavit, Molinari asserts that he personally met with Fondren at least 20-30 times over the course of the negotiations between their respective businesses. These meetings, which occurred both before and after the execution of the Letter, took place at Molinari's offices, located in New York. (Response and Memorandum in Opposition, Dkt. No. 20 ("Pl.'s Opp."), Ex. 1, at ¶ 11.) According to Molinari's affidavit, at no point did Fondren inform Molinari that it was difficult or cumbersome for Fondren to transact business in New York. Molinari claims that Fondren also openly stated that he traveled to New York to transact business with other entities such as Sunguard, Inc. and Moody's Analytics.[4] Under New York law, the extensive negotiations that occurred between Molinari and Fondren in New York are sufficient to make out a prima facie case that Fondren transacted business in New York, thus giving rise to personal jurisdiction pursuant to § 302(a)(1). At bottom, the Letter is alleged to be a binding agreement between parties, and negotiations regarding this agreement, both prior and subsequent to its execution, occurred in New York. Accordingly, the Court has jurisdiction over Fondren in light of New York's long-arm statute.

---

[4] Defendants counter that Sunguard, Inc. is a Pennsylvania corporation with headquarters located in Wayne, Pennsylvania, within three miles of Defendants' offices. (Memorandum of Law in Further Support of Defendants' Motion to Dismiss, Dkt. No. 14 ("Def.'s Rep."), at 1-2.)

Defendants argue that even if Fondren transacted business in New York, the Court nevertheless lacks personal jurisdiction in light of the so-called "fiduciary shield doctrine," which shields a corporate officer from the reach of New York's long-arm statute when his business within the state was in his capacity as a corporate officer, rather than as an individual. *See Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F. Supp. 305, 309-10 (S.D.N.Y. 1983) ("Plaintiff's contention that Wallace and Williams, in their individual capacities, are subject to New York jurisdiction rests on three theories. First, their presence in New York during the previously discussed meetings. This ground must fail, however, because the individuals travelled to New York solely in their corporate capacities."); *accord Louis Marx & Co., Inc. v. Fuji Seiko Co., Ltd.*, 453 F. Supp. 385, 389 (S.D.N.Y. 1978) ("It is well established that a corporate officer acting on corporate business does not thereby become amenable to suit in his or her personal capacity in that jurisdiction." (footnote omitted)). However, the New York Court of Appeals, in *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40 (1988), squarely held this doctrine to be inapplicable in New York state, and carefully reviewed, and corrected, precedent in this Circuit to the contrary. *See id.* at 470 ("Turning then to the interpretation of CPLR 302, we determine that it is neither necessary nor desirable to adopt the fiduciary shield doctrine in New York. Nothing in the [long-arm] statute's language or the legislative history relating to it suggests that the Legislature intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity."); *accord Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 981-82 (S.D.N.Y. 1992).

Accordingly, Fondren's contacts are sufficient to afford the Court personal jurisdiction over him, and it is irrelevant that those contacts were made in his capacity as an officer of DCM and Entre.

### C. Plaintiffs' Claims

Plaintiffs assert claims for the following: (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) fraud; (5) breach of fiduciary duty; (6) accounting; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress;[5] and (9) attorney's fees. Defendants move to dismiss all counts for failure to state a claim, excepting Plaintiffs' breach of contract claim.

#### 1. Conversion

"Under New York law, to plead a claim of conversion, a plaintiff must establish that '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). A conversion claim cannot succeed, however, where the party fails to "allege[] a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (footnote omitted); *accord Priolo Commc'n, Inc. v. MCI Telecommc'ns Corp.*, 248 A.D.2d 453, 454 (2d Dep't 1998) ("The plaintiff's claim alleging conversion merely restates its cause of action to recover damages for

---

[5] Plaintiffs' intentional and negligent infliction of emotional distress claims are made on behalf of Lantona and Molinari. (*See* Compl. at ¶¶ 96-127.)

breach of contract and does not allege a separate taking. A claim to recover damages for conversion cannot be predicated on a mere breach of contract." (citation omitted)); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982) ("However, an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." (citation omitted)). At bottom, "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 328 (S.D.N.Y. 2001) (citations omitted).

Defendants claim that Plaintiffs' conversion claim is entirely duplicative of its breach of contract claim, whereas Plaintiffs contend—without citation—that the fact that a conversion claim could conceivably be maintained against Fondren in his individual capacity, even in the absence of a valid contract claim, underscores its distinctiveness from the contract claim. Despite Plaintiffs' assertion that the alleged commingling of funds on the part of Defendants constitutes the separate wrong required for a conversion claim, these allegations represent the quintessential case under New York law "where the remedy for the proposed claims would merely duplicate that already sought," meaning that "the addition of new claims is not warranted." *Id.* at 329 (citation omitted). Here, for both the breach of contract and the conversion claim, Plaintiffs seek the return of the fully refundable deposit, submitted in accordance with the terms of the Letter of Intent.

And while there is an argument to be made that the alleged commingling of funds constitutes a separately unlawful act by Defendants, this unlawful act is part and parcel of the failure to return the refundable deposit, which in turn constitutes the gravamen of the contract claim. *See, e.g.*, *Larson v. Eney*, No. 08 Civ. 3513 (DC), 2009 WL 321256, at *2 (S.D.N.Y. Feb.

10, 2009) ("Defendant's motion to dismiss the conversion and implied covenant of good faith and fair dealing claims is also granted. Both claims arise out of the same facts as the breach of implied contract claim, and New York law does not permit such claims to proceed where a breach of contract claim is also pled." (citations omitted)).

### 2. Unjust Enrichment

In New York, "for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001) (citations omitted).

Here, Defendants move to dismiss this claim on the ground that it is duplicative of Plaintiffs' contract claim. This argument, however, ignores the reality of pleadings in the alternative—a familiar practice in this Circuit. *See, e.g.*, *Pro Bono Investments, Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429777, at *8 (S.D.N.Y. Sept. 30, 2005) (noting that Plaintiff brought its unjust enrichment claim under New York law as an alternative to its breach of contract claim). Accordingly, Plaintiffs' unjust enrichment claims, though "not permitted [if] an express agreement exists," are not precluded "where the agreement may not be enforceable." *Id.* (citations omitted). Additionally, Plaintiffs have sufficiently alleged the elements of an unjust enrichment claim under New York law, contending that Defendants were enriched by retention of the fully refundable deposit, that such retention was both wrongful and in patent disregard of an understanding among the parties, and as such, that the $100,000.00 deposit should be returned to Plaintiffs.

Therefore, Plaintiffs' Complaint states a viable claim for unjust enrichment as an alternative to their breach of contract claim, and thus, Defendants' motion to dismiss is denied as to this claim.

### 3. Fraud

"Under New York law, in order to sustain a claim for fraud, a plaintiff must adequately establish each of five fundamental elements, namely: (1) representation of a material fact; (2) falsity; (3) scienter; (4) reasonabl[e] reliance; and (5) injury." *Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ), 2008 WL 4778813, at *6 (S.D.N.Y. Oct. 31, 2008) (citation omitted). Importantly, "a plaintiff cannot transform a contract claim into a fraud claim simply by alleging that the defendant 'entered the . . . agreement while intending not to perform it.'" *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 330 (S.D.N.Y. 2009) (quoting *Nash v. The New Sch.*, No. 05 Civ. 7174, 2009 WL 1159166, at *3 (S.D.N.Y. Apr. 29, 2009) (quotations and citations omitted)). A plaintiff may allege actionable fraud that is sufficiently separate from his breach of contract claim by pointing to either "(a) a legal duty separate and apart from the contractual obligation, (b) a 'fraudulent misrepresentation collateral or extraneous to the contract,' or (c) special damages that are caused by the fraud that are not recoverable under the contract claim." *Id.* at 330-31 (citations omitted).

Here, Plaintiffs have failed to allege with particularity any one of these three exceptions to the general rule against transforming a contract claim into one for fraud, as required by Federal Rule of Civil Procedure 9(b). *See Fleming v. Hymes-Esposito*, No. 12 Civ. 1154 (JPO), 2013 WL 1285431, at *6 (S.D.N.Y. Mar. 29, 2013) ("Fraud claims are subject to Rule 9(b), and must be pleaded with particularity." (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)). As this case was removed from state court, however, the Court will

permit Plaintiffs to replead their fraud claim in accordance with federal pleading requirements,[6] specifying how, if at all, their fraud claim extends beyond an allegation that "Defendants . . . intentionally induced Plaintiff Gate to provide the . . . fully-refundable deposit so as to capitalize their own companies and with no true intention to negotiate exclusively with Plaintiff Gate." (Compl. at ¶ 72.)  Moreover, to the extent that Plaintiffs seek to allege punitive damages in connection with their fraud claim (*see* Pl.'s Opp. at 15), they too may replead the basis for this claim in conjunction with their fraud allegations.

### 4. Breach of Fiduciary Duty and Punitive Damages

"To state a claim for a breach of fiduciary duties under New York law, a plaintiff must establish: '(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach.'" *Ellington*, 837 F. Supp. 2d at 191 (quoting *Metropolitan West Asset Management, LLC v. Magnus Funding, Ltd.*, No. 03 Civ. 5539 (NRB), 2004 WL 1444868, at *8 (S.D.N.Y. June 25, 2004)).  Such a claim may give rise to punitive damages where the acts giving rise to the breach

---

[6] Here, Plaintiffs request leave to amend their Complaint in the event of dismissal.  (Pl.'s Opp. at 18.)  As the Court has previously noted:
> [G]iven that the Complaint was drafted as part of a state court filing, but is now subject to the higher pleading standards applicable in federal court, it would be particularly consistent with principles of fairness and justice to afford Plaintiff an opportunity to file an amended complaint.  Whether or not the Plaintiff can actually cure the deficiencies in the Complaint remains to be seen, but because the Court bases its dismissal of the Complaint primarily on Plaintiff's failure to allege non-conclusory facts in support of its claims, leave to replead is appropriate.

*Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217 (JPO), 2013 WL 1759575, at *7 (S.D.N.Y. Apr. 24, 2013) (citation omitted).

were "willful, wanton, or malicious." *See, e.g.*, *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585-86 (S.D.N.Y. 1989).

While some relationships are by their nature fiduciary, *see, e.g.*, *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 364 (2d Cir. 1973) ("Corporate officers and directors in their relations with shareholders owe a high fiduciary duty of honesty and fair dealing." (citation omitted)), others, such as "arms-length" business relationships, do not trigger such a heightened duty. *Osan Ltd. v. Accenture LLP*, 454 F. Supp. 2d 46, 57 (E.D.N.Y. 2006).

Accordingly, in order to allege a fiduciary relationship, four elements are required: "(1) [t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (quotations and citations omitted). Again, however, "a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Osan*, 454 F. Supp. 2d at 57 (quotations and citation omitted).

Plaintiffs respond to Defendants' motion to dismiss this claim by analogizing the relationship between the parties to that of one between the shareholders of a corporation and its officers, asserting that "the parties' relationship is closer to a fiduciary than one found in an arms length business transaction." (Pl.'s Opp. at 14.) The Court disagrees, finding the alleged relationship among the parties to be a conventional business interaction, rather than one that "exists from the assumption of control and responsibility, and is founded upon trust reposed by one party in the integrity and fidelity of another." *Credit Suisse First Boston Mortg. Capital LLC v. Cohn*, No. 03 Civ. 6146 (DC), 2004 WL 1871525, at *5 (S.D.N.Y. Aug. 19, 2004) (citation omitted). Here, if anything, the alleged facts suggest that both sides of the transactions

giving rise to this suit were similarly exposed, in that both Plaintiffs and Defendants were engaged in negotiations and the exchange of confidential information with *each other*. The relationship was not one-sided, nor did it constitute the "assumption of control and responsibility" by Defendants at the expense of Plaintiffs. It cannot be that the mere payment of monies, as Plaintiffs allege here, can transform an ordinary business relationship into one between fiduciaries. Moreover, despite Plaintiffs' emphasis on the central purpose of the negotiations—namely, that Gate was to become a shareholder of DCM or Entre—the fact remains that Plaintiffs never became shareholders of either entity.

Thus, on these facts, Fondren cannot be said to have held a position akin to that of an officer or director in his relationship with Plaintiffs, putative shareholders though they might have been. Accordingly, Plaintiffs' breach of fiduciary duty claim, together with the claim for associated punitive damages, is dismissed.

### 5. Accounting

Plaintiffs also seek to compel an accounting from Defendants, "beginning on March 14, 2011 through the present of the location of its fully-refundable deposit." (Compl. at ¶ 89.) Plaintiffs base this claim on the "fiduciary relationship created between the parties to the March 14, 2011 Letter of Intent." (*Id.* at ¶ 90.) Defendants again contend that no fiduciary relationship ever existed among the Parties, thus prohibiting any accounting claim as a matter of law.

"To obtain an accounting under New York law, a plaintiff must show: '(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'" *Ellington*, 837 F. Supp. 2d at 207 (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). Again,

"[w]hile acknowledging the amorphous nature of a fiduciary relationship, New York courts have generally described it as one in which a party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge." *Id.* at 191 (quotations and citations omitted).

Here, Plaintiffs base the entirety of their claim for an accounting on the existence of a mutual nondisclosure agreement among the parties. And while this agreement certainly gave rise to certain duties, a confidential relationship born out of a standard contractual provision will nevertheless fail to give rise to a required fiduciary relationship. *See, e.g.*, *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010) ("Stadt's claim of breach of fiduciary duty and his request for an accounting fail because the Complaint does not allege adequate facts to suggest that the parties were in a relationship of sufficient trust and confidence to create either a fiduciary duty or a confidential relationship." (footnote omitted)). For example, in *Stadt*, the plaintiff based its allegation of a confidential relationship on a "License Agreement, in which the parties agreed not to disclose the details of their agreement to third parties." *Id.* (footnote omitted). Judge Scheindlin, however, noted that the license provision alone failed to "suggest that the parties had 'relations of a mutual and confidential nature,'" and instead, was "consistent with, a standard licensing agreement between two parties engaged in an arms length transaction." *Id.* (footnote omitted).

Moreover, even if Plaintiffs had adequately alleged a fiduciary relationship, an accounting still would be inappropriate, as "Plaintiff[s] ha[ve] sought money damages in [their] breach of contract claim, and because discovery as to the measure of damages would be available to [them] if [they] were to prevail on that claim, [they] can obtain all the information [they] seek[] in [their] existing claim at law." *Banks v. Correctional Servs. Corp.*, 475 F. Supp. 2d 189, 202 (E.D.N.Y. 2007) (footnote omitted); *accord Ellington*, 837 F. Supp. 2d at 207 ("Even if

Plaintiffs sufficiently demonstrated that they were in a fiduciary relationship with [Defendants], an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter. . . . The accounting requested here falls within the scope of the breach of contract claim under the PSA, and directly implicates the subject matter of the PSA's various disclosure and reporting requirements." (citations omitted)).

Accordingly, Plaintiffs' claim for an accounting is dismissed.

### 6.      Intentional and Negligent Infliction of Emotional Distress

Plaintiffs Molinari and Lantona each assert claims of intentional and negligent infliction of emotional distress. Defendants also move to dismiss these claims for failure to state a claim.

"Under New York Law, a plaintiff alleging intentional infliction of emotional distress must state four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Fleming*, 2013 WL 1285431, at *9 (quoting *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699 (1993)). And while the elements of *negligent* infliction of emotional distress differ from those required for the intentional tort, both require the same showing of outrageousness. *See Sheila C. v. Povich*, 11 A.D.3d 120, 130-31, 781 N.Y.S.2d 342 (1st Dep't 2004) ("Moreover, a cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by the defendants 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (quotations and citations omitted)).

Here, even construed generously, Plaintiffs have failed to allege conduct that is "utterly intolerable in a civilized community." At most, they have alleged that Defendants maliciously

17

failed to return $100,000.00, thereby taking advantage of Plaintiffs, and causing Molinari and Lantona to suffer psychological and physiological problems as a result. As "[t]hose few claims of intentional infliction of emotional distress that have been upheld by [New York courts in the past] were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff," *Seltzer v. Bayer*, 272 A.D.2d 263, 264-65 (1st Dep't 2000) (citations omitted), the allegations present in the instant Complaint will likewise fail to satisfy this "rigorous" and "difficult" standard. *See Dilworth v. Goldberg*, No. 10 Civ. 2224 (JMF)(GWG), 2012 WL 4017789, at *22 (S.D.N.Y. Sept. 13, 2012).

Accordingly, Lantona's and Molinari's claims for intentional and negligent infliction of emotional distress are dismissed for failure to state a claim.

### 7. Attorney's Fees

Plaintiffs also seek attorney's fees in the amount of at least $25,000.00, as Defendants failed to return Plaintiffs' deposit prior to the filing of the Complaint, ignoring "all of Plaintiff Gate's attempts to communicate with Defendants." (Compl. at ¶ 94.) Defendants move to dismiss this claim, contending that the exceptions to the baseline "American Rule" of attorney's fees, which mandates that each party pay its own way in litigation, are not present in the instant case.

"Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc.*, 337 F.3d 186, 199 (2d Cir. 2003) (citations omitted); *accord Gorman v. Fowkes*, 97 A.D.3d 726, 727 (2d Dep't 2012) ("The general rule is that '[a]n attorney's fee is merely an incident of litigation and is not recoverable absent a specific contractual provision or statutory authority' . . . ." (quoting *Levine v. Infidelity,*

18

*Inc.*, 2 A.D.3d 691, 692 (2d Dep't 2003)).  In addition to the familiar exceptions in the case of statutory authorization or a contractual agreement among the parties, there is the so-called "bad faith" exception, warranting an award of attorney's fees by the court where there is "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (citations omitted).  "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."  *Doyle v. Turner*, 90 F. Supp. 2d 311, 323 (S.D.N.Y. 2000) (quotations and citation omitted).

      Here, Plaintiffs patently fail to allege that Defendants have advanced meritless arguments or acted with an improper purpose.  Accordingly, this claim must be dismissed.  Notably, should other information arise during the course of litigation that suggests such behavior, Plaintiffs remain free to petition the Court for attorney's fees.  *See, e.g.*, Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *see also Agee*, 114 F.3d at 398 ("A district court has 'inherent power' to award attorneys' fees against the offending party and his attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'  Similarly, under 28 U.S.C. § 1927, the court may require any *attorney* to pay costs if he or she 'so multiplies the proceedings in any case unreasonably and vexatiously.'" (internal citation omitted) (emphasis in original)).

**III.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

1. Defendants' motion to dismiss is GRANTED with respect to Plaintiffs' conversion, fraud, breach of fiduciary duty, accounting, intentional infliction of emotional distress, negligent infliction of emotional distress, and attorney's fees claims.

2. Plaintiffs' fraud claim is dismissed without prejudice, and with leave to replead within 30 days.

3. Plaintiffs' attorney's fees claim is dismissed without prejudice to reapplication in the future, should circumstances during the course of litigation merit such a petition.

4. Defendants' motion to dismiss is DENIED with respect to Plaintiffs' unjust enrichment claim.

5. Defendants' motion to dismiss is DENIED with respect to personal jurisdiction over Larry E. Fondren.

The Clerk of Court is directed to close the motion at docket entry number 3.

SO ORDERED.

Dated: New York, New York
July 9, 2013

_____
J. PAUL OETKEN
United States District Judge